**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ERIKA ALEJANDRA MEJIA SANCHEZ, *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>ALEXANDRA LOZANO KENNEDY, *et al.*<br>Defendants. | No. 2:26-cv-01587-RSM<br><br>**DECLARATION OF AURORA LIZZETTE LEAL RUBIO** |

I, Aurora Lizzette Leal Rubio, hereby declare under the penalty of perjury under the laws of the State of Washington that I make the following statements of fact from personal knowledge, am over 18 years of age, and am competent to testify if called upon to do so.

1. I am fluent in the English language although Spanish is my mother tongue.

2. I am a resident of King County, Washington and I emigrated to the United States from Mexico.

3. I am not a lawful permanent resident of the United States nor a citizen of the United States.

4. I am a former client of Defendants Alexandra Lozano Kennedy and La Luz del Camino Legal, PLLC (the "Firm")



TOMLINSON BOMSZTYK RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

5. I saw the Firm's advertising and trusted the Firm in part because of the Firm's use of the *Virgen de Guadalupe* in marketing materials and the implications connected with the *Virgen*—including faith and the ability to perform miraculous feats. Not only was the Firm's faith-oriented advertising comforting to me, the Firm advertised extensively which also made me feel like I could trust the firm to represent me effectively. When I visited the office, I observed that the firm had an altar and the Virgen prominently displayed which is traditional in many homes in Mexico.

6. I entered the United States with a visitor visa and retained the Firm to represent me in seeking permanent residency as the parent of a United States citizen child over the age of 21. I have two children with Plaintiff Gerardo Prado Rivera, both of whom are United States citizens. Plaintiff Prado Rivera and I are not married.

7. I attended a phone consultation with the Firm on October 16, 2020. A staff person conducted the intake, and then Ms. Lozano came on the phone to congratulate me and tell me I was eligible for VAWA. The Firm then sent me a welcome video.

8. A few days after my initial consultation, on October 21, 2020, I received an email from the Firm with a link instructing me to electronically sign the contract with a digital signature app. I signed the contract with a digital signature. On October 21, 2020, the Firm also instructed me to use a link to digitally sign the signature page of each of the application forms *before* the forms were completed.

9. The contract I signed required to pay $10,500.00 to file an "I-360 Con La Residencia." I was also charged $35.00 for a fingerprint check, $1,225.00 for the immigration fee, $1,2000 for the psychological examination, $500 for the Lozano interpreter to interpret



TOMLINSON BOMSZTYK RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

for me at the adjustment of status interview, approximately $500 for an independent medical examination, and $1,000 for the firm to reconcile my social security earnings history.

10. When I spoke with the Firm employee who conducted my intake, I expressed interest in applying for permanent residency now that my daughter was 21 and I had entered with permission with my tourist visa. The Firm told me that they would file an I-360 which was never clearly explained to me. The employee told me that the I-360 guaranteed me my work permit and social security number within six months. The firm did not ask for copies of my entry paperwork.

11. After I signed my contract, I was instructed to complete a phone interview regarding my case. The person who interviewed asked me lots of questions about my daughter and her attitude and her comportment. Only then did I realize that the firm was using problems with my daughter to file my case. Nobody from the Firm provided me with a detailed explanation of what VAWA was and the potential adverse impacts it could have on my daughter.

12. My contract with the Firm makes no mention of the Violence Against Woman Act or VAWA but refers to the filing of a form I-360, which serves as an application for multiple types of immigration benefits, including VAWA.

13. I have come to understand that, at the time the Firm filed a VAWA status adjustment, the Firm knew or should have known that I was eligible for a "regular" adjustment of status because I was inspected and admitted with my visitor visa. Despite that, the Firm insisted I file a more complex, more expensive, and riskier VAWA petition. The only reason that I can think of that the Firm did this was to upsell me and charge me more.



TOMLINSON
BOMSZTYK
RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

14. None of the employees of the Firm reviewed the Forms or the VAWA declaration with me before they were filed. If I had been given an opportunity to review my forms, I would have objected to their filing because the Firm erroneously claimed that I had committed misrepresentation to obtain my entry visa. The forms contained numerous errors related to my employment.

15. Similarly, if an employee had reviewed the VAWA declaration with me prior to submitting it, I would have objected because I would not have agreed to file paperwork that could damage my child, especially when I entered the United States in a legal manner. Instead, the Firm digitally affixed my signature to the forms and declaration without ever providing me the opportunity to review them before filing with them with immigration. I later learned that the Firm also neglected to include a copy of my entry paperwork with the filing and failed to file the pardon that would have been necessary to address the alleged misrepresentation.

16. As a portion of the fees paid to the Firm, I paid for a psychological assessment. This assessment was performed by Defendant En Solidaridad, PLLC. I do not recall ever being informed that En Solidaridad was connected to the Firm. I do not believe the psychological evaluation accurately represented my actual psychological state, but was still presented to immigration officials by the Firm.

17. I understand that, on April 23, 2024, USCIS sent a Request for Evidence to the Firm requesting that the Firm "submit signature pages with original signatures." On June 12, 2024, the Firm contacted me and requested that I sign my name multiple times on a blank piece of paper for the Firm to use in responding to the Request for Evidence.

18. On September 17, 2025, the United States Customs and Immigration Service ("USCIS") denied my residency application because the Firm had appended digital signatures



TOMLINSON BOMSZTYK RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

instead of simply requesting that I review the documents and sign with an ink pen. The Firm informed me of the denial on September 25, 2025 and closed my case in their in-house app before they informed me of the denial.

19. I did not and could not reasonably have discovered the impacts of and injuries caused by the actions of the Firm until around September 25, 2025.

20. After USCIS denied the application prepared by the Firm, USCIS referred me to the immigration court for deportation. I have paid thousands of dollars to a new attorney to represent me. The removal proceeding remains pending.

21. I also had to attend two interviews with ICE which cost me $3,000 more for legal representation that would have been necessary but for the Firm's negligence.

22. As a result of Defendant Lozano's actions, I was at a substantial risk of deportation. My current attorney was able to file paperwork, and the judge terminated the deportation. But now I am starting all over again. I understand that it is more likely than not that, if I had followed the "regular" process to adjust status, that I would likely not be facing risk of deportation.

23. I hired Alexandra Lozano Immigration Law, PLLC and understood that Ms. Lozano herself represented me. However, other than one video conference, I never met Ms. Lozano. Yet Ms. Lozano signed my immigration applications

24. I spoke with an attorney from Lozano's firm, Hannah Steen, about one week prior to my adjustment of status interview on September 17, 2025. Ms. Steen told me that my case would be denied because of the lack of wet signature, and I asked her what was the point of attending the residency interview? She replied that we still needed to go and it was possible



TOMLINSON
BOMSZTYK
RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

the case would be approved. Ms. Steen attended the interview with me. I believe that these were the only two interactions I had with a licensed attorney of the Firm.

25. I am a successful person. I own my home and earn six figures. I am angry at myself for having trusted the Firm. I feel betrayed by the Firm that I relied upon for guidance, as the course of action taken in my case has now placed me at risk of deportation. The consequences of this situation have been devastating to my peace of mind and overall quality of life. I live with constant worry about my future in the United States, and the stress, fear, and emotional strain resulting from this uncertainty affect me daily. Although my VAWA application was valid, I worry about the impact of my VAWA application on my daughter who is studying to become a veterinarian. Thus, because of the Firm's actions, I am suffering substantial emotional distress.

**I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct to the best of my knowledge and belief.**

DATED this 8|29|2026 at Seattle, Washington.

Aurora Lizzette Leal Rubio
Plaintiff



TOMLINSON BOMSZTYK RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907