**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ERIKA ALEJANDRA MEJIA SANCHEZ, *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>ALEXANDRA LOZANO KENNEDY, *et al.*<br><br>Defendants. | **NO. 2:26-cv-01587**<br><br>**DECLARATION OF GERARDO PRADO RIVERA** |

I, Gerardo Prado Rivera, hereby declare under the penalty of perjury under the laws of the State of Washington and the United States of America that I make the following statements of fact from personal knowledge, am over 18 years of age, and am competent to testify if called upon to do so.

1. I am fluent in the English language although Spanish is my mother tongue.

2. I am a resident of King County, Washington and I emigrated to the United States from Mexico.

3. I am not a lawful permanent resident of the United States nor a citizen of the United States.



TOMLINSON
BOMSZTYK
RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

4. I am a former client of Defendants Alexandra Lozano Kennedy and La Luz del Camino Legal, PLLC (the "Firm")

5. I saw the Firm's advertising and trusted the Firm in part because of the Firm's use of the *Virgen de Guadalupe* in marketing materials and the implications connected with the *Virgen*—including faith and the ability to perform miraculous feats. Not only was the Firm's faith-oriented advertising comforting to me, the Firm advertised extensively which also made me feel like I could trust the firm to represent me effectively. When I visited the office, I observed that the firm had an altar and the Virgen prominently displayed which is traditional in many homes in Mexico.

6. I entered the United States with a visitor visa, retained te Firm to represent me in seeking permanent residency as the parent of a US citizen child over the age of 21. I have two children with Plaintiff Aurora Lizzette Leal Rubio, both of whom are United States citizens. Plaintiff Leal Rubio and I are not married.

7. I attended a phone consultation with the Firm on October 16, 2020. A staff person conducted the intake, and then Ms. Lozano came on the phone to congratulate me and tell me I was eligible for VAWA. The Firm then sent me a welcome video.

8. A few days later, on or about October 21, 2020, I received an email instructing me to electronically sign the contract with the Firm using a digital signature link. The Firm instructed me to use a link to digitally sign application forms related to my immigration matter *before* the forms were completed.

9. The contract I signed required to pay $10,500.00 to file an "I-360 Con La Residencia." I was also charged $35.00 for a fingerprint check, $1,225.00 and $930.00 for the immigration fees, $1,2000 for the psychological examination, $500 for the Lozano interpreter



TOMLINSON
BOMSZTYK
RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

to interpret for me at the adjustment of status interview, approximately $500 for an independent medical examination, and $1,000 for the firm to reconcile my social security earnings history. My contract with the Firm makes no mention of the Violence Against Woman Act or VAWA but refers to the filing of a form I-360, which serves as an application for multiple types of immigration benefits, including VAWA.

10. When I spoke with the Firm employee who conducted my intake, I expressed interest in applying for permanent residency now that my daughter was 21 and I had entered with permission with my tourist visa. The Firm told me that they would file an I-360 which was never clearly explained to me. The employee told me that the I-360 guaranteed me my work permit and social security number within six months. The firm did not ask for copies of my entry paperwork.

11. After I signed my contract, I was instructed to complete a phone interview regarding my case. The person who interviewed asked me lots of questions about my daughter and her attitude and her comportment. Only then did I realize that the firm was using problems with my daughter to file my case. Nobody from the Firm provided me a detailed explanation of what VAWA was and the potential adverse impacts it could have on my daughter.

12. None of the employees of the Firm reviewed the Forms or the VAWA declaration with me before they were filed. If I had been given an opportunity to review my forms, I would have objected to their filing because the Firm erroneously claimed that I had committed misrepresentation to obtain my entry visa.

13. Similarly, if an employee had reviewed the VAWA declaration with me prior to submitting it, I would have objected because I would not have agreed to file paperwork that could damage my child, especially when I entered the United States in a legal manner. Instead,



TOMLINSON
BOMSZTYK
RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

the Firm digitally affixed my signature to the forms and declaration without ever providing me the opportunity to review them before filing with them with immigration. I later learned that the Firm also neglected to include a copy of my entry paperwork with the filing.

14. On February 11, 2021, the Firm texted me and asked me to sign a blank piece of paper with my signature multiple times. The signatures from the blank paper were digitized and affixed to the application forms The Firm submitted to USCIS on my behalf on or about February 19, 2021.

15. I have come to understand that, at the time the Firm convinced me to file a VAWA status adjustment, the Firm knew or should have known that I was eligible for a "regular" adjustment of status because I was inspected and admitted with my visitor visa. Despite that, the Firm insisted I file a more complex, more expensive, and riskier VAWA petition. The only reason that I can think of that the Firm did this was to upsell me and charge me more.

16. On April 23, 2024, USCIS sent a Request for Evidence to Defendant Lozano requesting that the Firm "submit signature pages with original signatures." On June 12, 2024, the Firm again contacted me and requested that I sign my name multiple times on a blank piece of paper for the Firm to use in responding to the Request for Evidence. On information and belief, the Firm again affixed my digital signature when responding to the Request for Evidence.

17. As a portion of the fees paid to the Firm, I paid for a psychological assessment. This assessment was performed by Defendant En Solidaridad, PLLC. I do not believe that psychological evaluation accurately represented my actual psychological states but was still



TOMLINSON
BOMSZTYK
RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

presented to immigration officials by the Firm. I was also unaware that Ms. Lozano's spouse owned En Solidaridad.

18. I spoke with an attorney from Lozano's firm, Josue, about one week prior to my adjustment of status interview on July 21, 2025. Josue attended the interview with me. I believe that these were the only two interactions I had with a licensed attorney of the Firm.

19. On August 29, 2025, the United States Citizenship and Immigration Service (USCIS) denied my residency application solely because the Firm improperly affixed electronic signatures when filing my application.

20. I understand, the Firm knew or should have known, at the time it filed immigration paperwork with an electronic signature and filed declarations and other filings in immigration proceedings without my review or approval, that my immigration filings were likely to be denied.

21. After USCIS denied the residency application prepared by the Firm, USCIS referred me to the immigration court for deportation. I paid thousands of dollars to a new attorney to represent me. I am lucky that the attorney convinced the judge to dismiss my proceedings to allow me to adjust status before USCIS. I am waiting for my new adjustment of status application to be adjudicated

22. After USCIS referred me to the immigration court, I received a letter from ICE requiring me to present myself in the Yakima ICE office. I spent the entire drive to Yakima sick to my stomach with worry that I might be shackled and deported to Mexico.

23. Lozano's actions placed me at a substantial risk of deportation. I understand that it is more likely than not that, if I had followed the "regular" process to adjust status, that I would be a lawful permanent resident.



TOMLINSON BOMSZTYK RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907

24. I hired Alexandra Lozano Immigration Law, PLLC and understood that Ms. Lozano herself represented me. However, other than one video conference, I never met Ms. Lozano. Yet Ms. Lozano signed my immigration applications

25. As a result of the Firm's acts and omissions, I have endured significant stress, anxiety, and fear about my future in the United States. I was forced to retain new counsel to terminate deportation proceedings that resulted from the Firm's conduct, and I continue to worry about the consequences these events may have on me and my family. As a result of the Firm's acts and omissions, I have suffered substantial emotional distress.

**I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct to the best of my knowledge and belief.**

DATED this 08/29/2026 at Seattle, Washington.

[signature]

Gerardo Prado Rivera
Plaintiff



TOMLINSON BOMSZTYK RUSS
1000 Second Avenue, Suite 3660,
Seattle, Washington 98104-1046
P/ 206.621.1871 F/ 206.621.9907